STEIGER's Adm'r *vs.* THOMAS HILLEN.—*June*, 1833.

A married man was seized of land in 1789, which during that year was sold at Sheriff's sale, to the ancestor of the defendant. The first tenant in fee died in 1802; his widow died in 1823. In 1827 the administrator of the widow filed a bill to recover a proportion of the rents and profits of the land, in lieu of dower. No demand or suit for the dower had been made or commenced by the widow in her life time; no reason was alleged for the omission. The purchaser and his descendants had been in possession from the time of sale. HELD, that the plaintiff could not recover.

Lapse of time may operate as a bar to a decree to account. In equity, laches and neglect are discountenanced; this tribunal only lends its power to reasonable diligence.

At law, a widow cannot recover damages against the alienee of her husband from his death, but only from the time of demand and refusal to pay her

for, or assign her dower. The feoffee was not in default until that time. The same rule must prevail in equity under the same circumstances. Where she makes no demand before her death, her claim to rents and profits is gone.

APPEAL from the Court of Chancery.

The present bill was filed by the appellant, *Margaret Ann Steiger, Adm'r C. T. A. of Mary Steiger*, against the appellee, *(Thomas Hillen,)* on the 21st of September, 1827. It alleged that *Andrew Steiger*, the former husband of *Mary Steiger*, was in his life-time seized and possessed of certain parcels of land, now within the limits of the city of *Baltimore*. That being so seized, the said lands were by the then sheriff of *Baltimore* county, sometime in the year 1789, sold and conveyed to *Solomon Hillen*, (under whom the defendant claims,) who in virtue thereof, entered upon them; and that he, and the defendant, have ever since held and enjoyed the same, and received to their own use and benefit all the rents and profits thereof. That long prior to the aforesaid sale and conveyance by the sheriff to *Hillen*, the testatrix of the complainant, and *Steiger*, were lawfully married, and that they lived, and continued to be man and wife until his death, which occurred in 1802. That said *Mary* survived him, and departed this life in the year 1823, and that during the whole period from the death of her said husband, until her own death, the said *Hillen* refused to account to her, or to complainant, as her administratrix, for any portion of the rents and profits of said land, although the said *Mary* during her life-time, insisted to said *Hillen*, that she was entitled to dower therein, and claimed the same as her right. The bill then prays that defendant may be compelled to pay such portion of the rents and profits of said land, as the said *Mary* was entitled to, and for general relief.

The answer admits the seizin of *Steiger*, the husband, as charged in the bill; the sale by the sheriff to *Solomon Hillen* in 1789, and the possession of the said *Solomon*, and the defendant's possession after him, from that time to

the present. The death of *Steiger* the husband and wife, as alleged in the bill, are also admitted. The answer denies expressly, that *Mary Steiger*, or any other person for her, in her life-time, ever made any demand on the respondent for dower in said lands, of which his possession has been undisturbed since the death of *Solomon Hillen*, which happened in the year 1801. The respondent then alleges, that he has been advised, that complainant cannot maintain any claim against him for dower in said lands, or for the arrears thereof.

There was a general replication to the answer, and a commission to take testimony, but the proof returned under it, does not appear to vary the case, as made by the pleadings.

BLAND, Chancellor, (Sept. term, 1828.)

It appears that the late *Andrew Steiger*, more than fifty years ago, being then married to the late *Mary Steiger*, the testatrix of the plaintiff, was seized in fee simple of a certain parcel of land, which was afterwards included within the limits of the city of *Baltimore*, and of which the lots in question, are the same, or a part. That in the year 1789, these lots of land were taken under a *fieri facias*, issued on a judgment obtained against the late *Andrew Steiger*, and offered for sale, when *Solomon Hillen*, the father of the defendant, and under whom he claims, became the purchaser, and immediately obtained possession, which has continued in him, and those claiming under him, ever since without interruption. That the late *Andrew Steiger* died some time in year 1802, leaving his wife *Mary* then alive, who died in September, 1823; and that about four years afterwards, on the 21st of September, 1827, *Margaret Ann Steiger*, as the administratrix, with the will annexed of the late *Mary*, filed this bill; in which she avers, that her testatrix had been entitled to dower in these lots of land, and therefore claims of this defendant, *Thomas Hillen*, an account of the rents and profits of that dower estate, to which

the late *Mary* has been entitled from the death of her hus-
band, until the time of her own death.   The defendant ad-
mits the truth of the facts which constitute this case so far ;
but he positively denies that the late *Mary*, at any time,
ever made any demand of her dower of him, or of those
under whom he claims ; and says enough, as to the unin-
terrupted length of his possession, to entitle him to rely
upon, and have all the benefit which can arise to him from
the lapse of time.   Proofs have been taken, but there is
nothing in them which materially varies the case, as shown
by the bill and answer.   It does not appear, that the late
*Mary* ever sued for, or made any demand of her dower,
nor is the fact of her not having done so, or the great de-
lay accounted for in any manner whatever.

   This is a claim of the profits of an estate for life, in lands,
made after it is fallen into the inheritance by the death of
the person who was entitled to it, and its enjoyment.   The
principal has perished, but the incident benefits of that
principal which had been received by the holder during its
existence are now claimed.   I have met with no instance
of such a claim.

   A widow brought a writ of dower, and obtained judg-
ment ; after which she took out a writ of enquiry of dama-
ges, but died before it was executed.   Her administrator
brought a *scire facias* upon the judgment, for the purpose
of reviving it, and recovering the damages.   But it was
held that the tenant was a *deforcior*, guilty of a wrong
which died with the person.   *Salk.* 252, 3.   *Mod.* 281.
1 *Show.* 97.   *Carth.* 133.

   From the manner in which this matter is said to have
been decided, there is however some room to doubt,
whether it must be considered as having been finally settled
even at law.   2 *Brown, C. C.* 632.   All private criminal
injuries or wrongs, as well as public crimes, are buried
with the offender.   And in all cases of wrong, where the
offender acquires no gain from the property of the injured
party, there also the rule, *actio personalis moritur cum per-*

Steiger's Adm'r *vs.* Hillen.—1833.

*sona* applies; and on the death of either party the right to reparation in damages for the wrong committed, is gone. But in a case where it cannot be denied, but that the holder of the estate has been enriched by property which did not belong to him, it would seem to be a strange misapplication of the rule to suffer it to effect a confirmation, by means of the accident of the death of the owner, of a right to a wrong-doer in property which he had unlawfully acquired. *Cowp.* 374.

But, however this may be at law, there is no doubt that in equity, the compensation given to a widow for the detention of her dower, is not considered as mere vindictive damages, the right to recover which, dies with the person.

The statute which gave her a compensation in damages in such case, meant it as an additional remedy; and that the mesne profits should afford her a subsistence from the time of the death of her husband; and therefore if she dies pending the suit, either before or after her right to dower has been established, the Court of Equity will go on to give to her representative, the amount of the mesne profits which had accrued, from the death of her husband up to the time of her own death. *2 Bro. C. C.* 620. *1 Fonb. Eq.* 159. It would seem to follow as a consequence of this determination, that damages for the detention of dower, do not arise from a wrong which dies with the person; that the amount of the mesne profits of the dower estate, to which the widow had become entitled, was a right to property vested in her, which would, in all cases, upon her death go to her legal representatives. But I do not find that the *English* authorities have recognized the principle entirely to this extent.

It is laid down by the most profound and accurate of the *English* lawyers, that if the heir, or his feoffee assign dower, and the wife accepteth it, she loseth her damages. *Co. Litt.* 33. The reason of which, as given by a respectable compiler, is, because having the dower which is the principal, she cannot sue for damages, which are but *conse-*

*quential, or accessory,* 2 *Bac. Abr.* 392.   If on the accep-
tance of dower, the claim to damages for its detention can-
not be sustained, because it is an accessory which cannot be
separately demanded; then it would seem that any other
circumstance, such as the death of the widow, which puts
an end to the title to dower, would in like manner extin-
guish the right to recover damages for its detention.

But this position, that the acceptance of dower amounts
to a relinquishment of the right to the damages, is in truth,
founded on the accord and acceptance of satisfaction of the
party ; and not on the notion that damages are but *conse-*
*quential or accessory*, and as such cannot be recovered after
the principal has been yielded up, or has ceased to exist.
For if such was the rule, then it should apply to all analo-
gous cases; and wherever the principal had in any manner
ceased to exist, all accessories of every description would
perish with it.   It is true, that in many respects a due re-
gard is paid to the property, out of which the demanded
rents and profits were derived ; since it has been held in
several cases, that the court cannot decree an account for
rents and profits, without having any regard to the recovery
of the possession, or give mesne profits but as incident to
a claim of possession, which is either admitted or adjudged
to be well founded ; for if a party neglects his right to a
real estate, until it is barred or extinguished, he shall not
be allowed to come into a Court of Equity to recover the
rents and profits of it.   1 *Atk.* 523.     *Pre. Chan.* 252, 516.

In real actions no damages were recoverable by the com-
mon law, because the question of title was first to be deci-
ded, and until that was determined, no question as to rents
and profits could arise.   This disposition to keep the two
enquiries separate, has in fact divested the action of eject-
ment of its mixed character, and reduced it to a mere suit
for the trial of the possessory title to real estate, and nothing
more.   But after the lessor of the plaintiff has, by that suit,
established his title, and obtained possession, he may then
bring a new and separate action for the mesne profits, or

that which is, in truth, but consequential or accessory to that he had previously obtained. Every demand of rents and profits by a suit of any kind, necessarily involves a question as to the legal title to the estate, the rents and profits of which are demanded. But in *England,* a Court of Equity never in any case undertakes to determine a mere legal title; and therefore if the legal title to dower is denied, the case must be referred to a court of common law, to be tried and determined before the Court of Chancery will proceed. Upon these grounds a denial of the widow's legal right to dower, might after her death present an obstacle in the way of the demand of rents and profits, made by her *personal* representative, which a Court of Equity would not be able to remove; because a court of common law could not try the validity of a legal title, which had become extinct; and where also, according to its own principles, there could be no object in ascertaining whether or not it had ever previously existed, since the damages which the deceased owner might have recovered, had she lived to establish her right, were founded on a wrong which died with the person.

But whatever difficulties may exist in relation to this subject in *England,* I conceive, they have been altogether removed by the principles that have been established in *Maryland.*

I have considered it as well settled, that this court has an absolute, and entirely concurrent jurisdiction in all cases of dower with the courts of common law; and consequently, that a widow comes into this court unembarrassed by any question that may arise, from the denial of the legality of her title. For this court having obtained jurisdiction of of the case, will extend its power to every branch, and bearing of the subject; and in order to put an end to the controversy, will determine every question, whether as to legal title, or mesne profits, that may or can arise. And acting with such unlimited power, and upon the principle that the compensation given to the widow, for the detention

of her dower, is not to be considered as vindictive damages, the right to recover which, dies with the person ; but as a portion of the property, the right to which had vested in her, it will not hesitate to enquire, and decide after her death, whether she had been vested with such a legal title to dower, as would have entitled her to those rents and profits of it, which, after her death, should be awarded to her personal representative, who comes into court to demand them.

Rents and profits of real estate are in many respects analogous to interest or money.   It is a general rule, that where a purchaser has obtained the possession of real estate he had purchased, and receives the rents and profits of it, he shall pay interest on the purchase money.   The receipt of the one, involving a duty to pay the other ; each being considered as the product of the respective values that had been exchanged. 3 *Atk.* 637. 12 *Ves.* 27. 1 *V. and B.* 501.   So on the other hand, war, any public calamity, or the act of God, may be such as to discharge the holder of the land from his accountability for its rent and profits. *Co. Lit.* 249. 4 *Co.* 82. And also, such as to stop the accumulation of interest, 3 *Call.* 22. 2 *Dall.* 102, 133. They are both accretions and additions to the principal subject, the right to which, as property, vests in the owner of the principal as they arise.

If a debtor pays the whole amount of the capital, leaving the interest only due, the creditor may nevertheless, sue for, and recover the interest alone, in an action brought only for that purpose. 2 *Ves. Jr.* 162. 4 *Harr. and Johns.* 337.   But if the creditor comes to a settlement of accounts with his debtor, and accepts the principal, leaving the whole, or a part of the interest unpaid, he cannot recover it ; because by his own accord, and accepted satisfaction, it has been relinquished.   3 *Johns.* 229.   5 *Johns.* 268.   The position is, therefore correct, that if the widow accepts an assignment of her dower from the heir, she thereby loses damages ; and that on the ground of her own accord, and

accepted satisfaction, and not merely because they are con-sequential or accessory ; and hence, if the widow does no act which can be construed into a relinquishment of the rents and profits of her dower, I cannot conceive why her *personal representative* should not be allowed to recover them, after the dower estate had by her death fallen into the inheritance.

If this claim was fresh, and strong on the ground of its having grown into existence during a short continuance of a recently fallen dower estate ; or if the delay had been sufficiently accounted for, I should not have had much hesi-tation in pronouncing a judgment in favor of the plaintiff, upon the principles I have explained, notwithstanding the novelty of its character, and the fact of there being no in-stance to be found in the *English* books, of such a claim ever having been made. But this is in all respects, a very old, and a very stale claim. It would seem, that although dower may be barred by a fine, and non-claim, within five years after the right had accrued, 2 *Bac. Abr.* 381 ; yet the statute of limitations does not in any way apply to an action of dower at law ; 6 *Johns.* 290. And it is also said that it affords no bar in equity, to a claim for the *arrears* of dower, without special ground. 9 *Ves.* 222. But the very great length of time during which this claim has been suffered to slumber, cannot, nor ought not to be overlooked.

The defendant, and those under whom he claims, have been nearly forty years in the undisturbed possession of this real estate. The late *Mary's* right to dower in it, if she ever had any, accrued by the death of her husband more than twenty years before her death ; and it was not until four years after her death, that this suit was institut-ed for the rents and profits, to which it is alleged she had become entitled during her widowhood ; but of which, or of her dower, it does not appear, that she ever made any demand ; nor is this great delay accounted for in any manner whatever. Therefore, upon this ground alone, of the very great lapse of time, I feel myself bound to reject this claim.

2 *Vern.* 276.   *Pre. Cha.* 518.   1 *Atk.* 494.   2 *Atk.* 610.
3 *Bro. C. C.* 645.   4 *Bro. C. C.* 268.   2 *Ves. Jr.* 583.   4
*Rand.* 454.   6 *Wheat.* 498.

*Decree*, that the bill be dismissed with costs.

From this decree, the complainants appealed to the Court of Appeals.

The cause was argued before EARLE, and MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*Mayer*, for the appellant, contended,

1. That the rents and profits of *Mary Steiger's* dower portion of the land, are recoverable, although not demanded in her life-time, and although her dower was not assigned to her.   *Wells et ux. vs. O.Beal*, 2 *Gill and Johns.* 468. *Mundy vs. Mundy*, 2 *Ves. Jr.* 122.   *Mundy vs. Mundy*, 4 *Bro. C. C.* 294.   The recovery of rents and profits in equity, is not merely incidental to the recovery of dower at law; they are decreed upon the ground, that the tenant in possession is a trustee for the widow.   If in cases of this sort, there has been an unreasonable delay, a court of equity will refuse interest, and sometimes costs; but if the defendant does not allege payment, and the loss from lapse of time of the evidence of the payment, the principal will be decreed, and this without a previous demand of dower on the part of the widow.   *Geast vs. Barber*, 2 *Bro. C. C.* 61. *Duke of Leeds vs. Corporation of New Randor*, *Ib.* 519. *Curtis vs. Curtis*, *Ib.* 620.   *Ib.* 631.   *Burridge vs. Bradyl*, 1 *P. Wms.* 127.   1 *Roper's Husband and Wife*, 447, 8, 9. 1 *Fonb. Eq.* 22, 39.   *Mundy vs. Mundy*, 2 *Ves. Jr.* 122. *Coop. Pl.* 136.   3 *Atk.* 24.   *Ib.* 130.   *Hayer vs. Thurber et al.* 4 *Johns. Ch. Rep.* 604.   *Swaine vs. Perine*, 5 *Ib.* 482.

2. The objection of length of time, to raise a presumption of payment, is not taken in the answer; but if taken, it is rendered nugatory, by the residue of the answer, which admits, among other things, that no payment has ever been

made; and finally, that no one having been liable for these rents and profits, except the defendant, and he suggesting no difficulties in the way of accounting, occasioned by the lapse of time, the objection is not in this case open to him. *Edsell vs. Buchanan,* 2 *Ves. Jr.* 83. *Stackhouse vs. Barnston,* 10 *Ves. Jr.* 465.

3. Limitations do not run against a claim for dower. *Ainslie vs. Medlycott,* 9 *Ves.* 22. *Foster vs. Wood,* 6 *Johns. C. Rep.* 290. 3 *Harr. and McHen.* 38.

4. The rents and profits are to be accounted for, from the death of the husband.

*T. P. Scott,* for the appellee.

The cases cited on the other side, were cases in which the husband *died seized* of the property, which circumstance does not exist here. But if it were so, still, as no claim for dower was made by the widow in her life-time, her personal representative is not entitled to the rents and profits. The object of the law, in allowing dower to the widow, was that she should have a support during her life-time. 1 *Thos. Co. Lit.* 527, 569. 4 *Kent. Com.* 35. And consequently, a claim on her part, during her life is necessary. *Norton vs. Frecker,* 1 *Atk.* 525.

Prior to the statute of *Morton,* neither damages could be recovered at law, nor rents and profits in equity on account of dower. 1 *Coke Lit.* 585. And as by that statute, damages at law could only be recovered where the husband died siezed, so the corresponding remedy in Chancery, for the rents and profits is gone, if the same circumstance does not exist. *Mundy vs. Mundy,* 4 *Bro. Ch. C.* 295. 4 *Kent's Com.* 63, 64. *Swaine vs. Perine,* 5 *Johns. Ch. Rep.* 482.

2. If however, the present bill had been filed by the widow herself, still, in consequence of the great lapse of time, the court would dismiss it. *Deloraine vs. Browne,* 3 *Bro. Ch. R.* 645. *Hircey vs. Dinwoody,* 4 *Ib.* 268. *Pickering vs. Lord Stamford,* 2 *Ves. Jr.* 583. *Underwood vs. Lord Courtown,* 2 *Sch. and Lef.* 71.

It is said, the answer does not properly take the defence of lapse of time.   It does do so, at least in substance, and as the plaintiff has not demurred, he cannot avail himself of any mere formal objection.

ARCHER, J., delivered the opinion of the court.

This is a bill filed by the administrator of *Ann Steiger*, to recover the rents and profits of land, in which, in her life-time, she had a claim of dower.

The husband during the marriage anterior to the year 1789, was seized of the lands, out of which the rents and profits are claimed, and the same in that year were sold at sheriff's sale to the ancestor of the respondent, who, together with the respondent, have been ever since in possession of the lands.   The husband of the complainant's intestate died in 1802, and she herself died in 1823, without ever having demanded, claimed, or sued for her dower.   The present claim was presented in chancery by the administrator on the 21st of September, 1827.

Thus it appears that the respondent has been in possession, undisturbed by any claim of dower, for a period of twenty-one years, and that the bill was filed by the administrator, after the lapse of four years, from the death of the widow, and that no claim for rents and profits has been made during a period of twenty-five years.

Lapse of time may operate as a bar, to a decree to account.   In equity, *laches* and neglect are discountenanced. Stale demands, without any effort to enforce them, and after a long acquiescence, cannot meet the aid of a tribunal which only lends its power to reasonable diligence.   After the lapse of twenty-five years from the inception of title, a delay, entirely unexplained, and without any claim whatever, in the intermediate time being made, it would seem to be against public policy and convenience to allow the commencement of a controversy for rents and profits.

Be this however as it may, there exist other grounds

which in our judgment, are entirely decisive of this con-
troversy.

Here the lands have been aliened in the husband's life-
time, and here is the occurrence of the widow's death,
without any recovery or suit, demand or claim therefor in
her life-time, and without the averment or proof of the ex-
istence of any circumstance calculated to prevent the one
or the other.

The authorities have been carefully examined, to ascer-
tain whether such a case had before occurred for adjudica-
tion. But the most diligent search has not enabled either
the court or the counsel to ascertain any claim of a similar
character.

At law, the widow could not recover damages against the
alienee of the husband from his death, but only from the
demand and refusal. The feoffee was not considered in de-
fault until on application he refused and neglected to assign
to the widow her rights, and it was supposed that being in
possession, he had good authority as against her, to take the
profits, until he required her dower.

The same rule must prevail in equity under the same
circumstances. The widow who is in pursuit of a legal
claim, and is desirous of claiming from the alienee rents
and profits anterior to the demand, should show to the court
some equitable circumstances. No misrepresentation, fraud,
or concealment, whereby she was prevented from preferring
her claim, has been pretended to exist; nor is it intimated
that there existed any legal impediments in her way, so
that a demand on her part might have been rendered fruit-
less.

And to show a total absence of all ground for enabling a
Court of Equity to look upon the alienee in the light of a
trustee, and in that capacity accountable for the rents and
profits, we have no evidence that the respondent ever
knew, that any incumbrance of dower hung over the es-
tate. For any thing which appears to us, even the exis-

tence of the widow, or of any rights she ever had, were unknown. Were she then living, and claiming dower and rents and profits, under such circumstances these could not be claimed anterior to the filing of the bill.

In this case, however, during her life-time, no claim to dower is set up in any manner. And the bill is filed against the respondent by her administrator. Her claim to the rents and profits bearing date only from the demand under the circumstances of this case, and there having been no demand, it follows that her claim to rents and profits is gone. We are not aware of any case, which has gone further than to entertain a bill for rents and profits, where the widow dies pending her bill for dower. In such case, they have been allowed her representative in equity, with this exception, where the legal estate out of which the profits are to spring is gone, the claim to such profits falls with it, unless they should probably be maintained by showing the existence of some of the circumstances above adverted to, none of which we have seen exist here.

DECREE AFFIRMED WITH COSTS.