Chew, Exc'r of Gibson, *vs.* The Farmers Bank, *et al.*—1850.

SAMUEL CHEW, EXC'R OF REBECCA GIBSON, *vs.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE FARMERS BANK OF MARYLAND, AND OTHERS.—*December* 1850.

By the act of 1798, ch. 101, sub-ch. 13, a widow may become entitled to dower after having accepted a devise in the will, in lieu of dower, provided nothing passes by such devise, but in such cases there must be clear proof that the provisions for her in the will is of no value.

Where a testator devises land which he had previously mortgaged, and charges it in the hands of the devisee, with a provision for his wife in lieu of her dower, which provision the widow accepts, and the land is sold to pay the mortgage debt, she may have a preferred claim upon the surplus proceeds of sale, as against the devisee, but she has no claim against the mortgagee.

A widow has no claim under her husband's will to lands which he had previously mortgaged, and which it becomes necessary to sell to pay the mortgage debt; she is entitled to dower in the mortgaged land, but if she elects to abide by the will, she has no longer any claim to the land.

No offer by the husband, though accepted by the wife, will deprive a mortgagee of his security; they cannot make mortgaged premises answerable for the widow's claim for dower in other lands.

A widow may recover dower before foreclosure of a mortgage, but after the sale of the mortgaged premises, she has no claim.

An annuity given by will to a widow in lieu of dower, became payable in 1818. No part of this was paid, and no legal steps taken to enforce its payment until 1846, when the widow filed a bill claiming the whole amount of the annuity, with interest, as a charge upon the lands, (now in the hands of *bona fide* purchasers,) devised to the parties, who were, by the will, required to pay it. HELD : That laches and lapse of time, was an effectual bar to the claim.

The fact that she did not know that this annuity was a charge upon the lands until 1839, when she was informed of it by a decision of the Court of Appeals, will not excuse her delay and neglect to proceed against the parties personally responsible for the payment of the annuity.

A lapse of twenty-five years from the inception of title, a delay entirely unexplained and without any claim whatever in the intermediate time being made, is an effectual bar to a claim for rents and profits.

The case of *Sellman vs. Bowen*, 8 *G. & J.*, overrules the case of *Steiger's Adm'r, vs. Hillen*, 5 *G. & J.*, 121, only in so far as the latter case, countenances the doctrine that a widow may, *at law*, recover from the alienee of her husband, damages for the detention of her dower.

Nothing else said in the case of *Steiger's Adm'r, vs. Hillen*, is questioned, and that case, so far as the law relating to laches and lapse of time is con-

46      v. 9

cerned, is affirmed by the case of *Kiddall vs. Trimble, Exc'r of Jacob,* 8 *Gill,* 207, and by this case; such ought now to be considered settled law in *Maryland*

APPEAL from the *Court of Chancery.*

This appeal was taken from a decree of the chancellor, (JOHNSON,) passed on the 7th of December, 1848, dismissing the bill of the appellant's testatrix, the complainant below. The following are the facts of the case as shown by the record:

*Jacob Gibson,* late of *Talbot* county, died in January, 1818, seized of large and valuable real estate, leaving a widow, *Rebecca Gibson,* the testatrix of the appellant, entitled to dower therein, and leaving also a last will and testament, duly executed on the 29th of November, 1817, to pass real estate, unrevoked at the time of his death, which was regularly admitted to probate by the orphans court of the said county, on the 13th of January, 1818. In this will the said *Gibson,* after sundry devises of his property to his several children, and particularly of real estate to his sons, *Edward R. Gibson* and *Fayette Gibson,* devised to the said *Rebecca Gibson,* during her widowhood, "the use, occupation and enjoyment of one moiety or half-part of his dwelling house, or one half-part or moiety of the dwelling house bequeathed to his son, *Fayette,* which he purchased of the *Hughes',* and lying in *Miles River Neck;* and also one-half of the use of the kitchen, garden, out-houses belonging to either of the aforesaid farms or plantations, whichever she might chose, at any time to live at during her widowhood aforesaid." He also directs his sons, "*Edward R. Gibson* and *Fayette Gibson,* their heirs and assigns, to furnish the said *Rebecca* with sufficient fire-wood off the lands bequeathed them, so long as she might remain in either of the houses aforesaid; the wood to be cut and delivered at the door, prepared for her use as fuel generally is." He also gave to the said *Rebecca,* sundry negroes for her life, and various articles of personal property, including "two horses and two cows, with the privilege of pasturage for them on the plantation she might from time to time choose to reside at, with the

use of the stables and provender of all kinds for them, during the year or years she may live." In a subsequent clause, he "gave and bequeathed to the said *Rebecca* $500 annually, whilst she remained his widow, to be paid to her by his two sons, *Edward R. Gibson* and *Fayette Gibson*, by them or their heirs jointly, $250 by each of them; but if she should marry, they were to pay her only one-half of that sum, equally between them." The said *Gibson* then declared the foregoing bequest and devise to his wife, the said *Rebecca*, "to be in lieu of, and full satisfaction for her dower in his lands and real estate, and her thirds of his personal estate, and remainder of both his real and personal estate not before devised or disposed of."

Previous to the execution of this will, viz: on the 25th of May, 1813, *Jacob Gibson* mortgaged his estate called "*Marengo*;" which includes the lands devised by him to *Edward R. Gibson* and *Francis Tilton*, and that portion of his estate devised to *Fayette Gibson*, which was by him afterwards sold to *Edward Gibson*, to the appellee, *The Farmers Bank of Maryland*, to secure a debt due by him to said bank, amounting at that time to $13,720.

*Rebecca Gibson*, the widow, accepted the provisions of the said will in her favor in lieu of her dower, within the time required by law, and *Edward R. Gibson* and *Fayette Gibson* entered into possession of the real estate devised to them respectively, and particularly described therein. *Fayette Gibson*, in 1821, sold his portion of "*Marengo*" to *Edward Lloyd*, for $7,025, by whom it was subsequently devised to his son, *Edward Lloyd*, and the estate know as "*Lombardy*," to one *John Wilson Blake*, for $10,500, after whose death it was again sold, and subsequently one portion came into the possession of *James Hopkins*, and the residue was held and owned by *Charlotte L. Edmondson*, as tenant for life, with remainder to *Horatio L. Edmondson*. *Edward R. Gibson*, in 1822, sold the estate devised to him, being part of "*Marengo*," to *Fayette Gibson*, for $22,344, in whose possession it continued up to the 29th of March, when it was purchased by

the *Farmers Bank of Maryland,* under a decree passed in the case of *McCormick vs. Gibson,* for the sale of the real estate of *Jacob Gibson,* for the payment of his debts, his personal estate having proved insufficient for that purpose, at the sum of $10,500.

The bill in the case of *McCormick vs. Gibson,* was filed by *James McCormick, Jr.,* in 1824, and resulted in a decree passed by the Court of Appeals on the 9th of February, 1839, affirming in part and reversing in part the decree of the chancellor, (BLAND,) directing a sale of the real estate of *Jacob Gibson,* for the payment of his debts. The Court of Appeals decreed that the sale should be made subject to the rights of *Rebecca Gibson,* the widow of the deceased, and in their opinion said : "The decree of the chancellor makes no reservation of the rights of the widow under the will of *Jacob Gibson,* but declares that the purchasers from the trustee shall hold the property sold to them, free, clear, and undischarged from all claims of the parties to this cause, of which *Rebecca Gibson,* the widow, is one. To conform to the act of Assembly, the decree should have ordered the sales to be made by the trustee, subject to the devises made to *Rebecca Gibson,* by the last will and testament of the deceased. There is no intimation in the bill or proof in the cause, that the provision made for the wife is fraudulent in being greater than the value of her common law rights, and therefore unjust and injurious to creditors. She is therefore entitled to the benefit of all the bequests and devises made to her by the will, as a purchaser for a fair consideration." (10 *G. & J.,* 113.)

About the time of its purchase, in 1839, the bank leased the land to *Fayette Gibson,* (who, under said lease, remained in possession until his death,) and on the 1st of January, 1841, sold a portion of its purchase to one *Kennedy R. Owen,* who entered into possession of the same.

On the 10th of June, 1846, *Rebecca Gibson,* the widow, filed her bill in the court of chancery, against all the parties just named, as in possession of, or claiming title to, the estates devised to the said *Edward R.* and *Fayette,* setting forth the

facts aforesaid; averring that she had continued, ever since the death of *Jacob Gibson*, unmarried, and his widow, claiming the benefit of the bequests and devises in her favor, as liens upon the said estates, averring them to have been, and to be, far less in value than her dower interest; and that by her acceptance thereof, all persons interested in the estate of the said *Jacob* had been greatly benefitted; alleging that no part of the said $500 had at any time been payed to her by the said *Edward* or *Fayette*, or any or either of their assignees, or by the said bank, but that the same, with interest from year to year, amounting on the 1st of February preceding, to the sum of $24,140, was still due and unpaid, and admitting that she had lived and was then living with her son, the said *Fayette*, on the estate devised to the said *Edward R. Gibson*, charging that her board had not been equal in value to the privileges to which, during that period, she had been entitled, but had abstained from claiming, or had not received.

The bill further claimed, that by not renouncing the said will, she became a purchaser for a fair and full consideration of the several devises to her, and charges, that if the said devises be not a trust in her favor, binding upon the said estates, there has been an utter failure of such consideration, and she is, therefore, entitled to dower in the said lands, and damages for the rents and profits due to her from the death of her husband; that *Edward R. Gibson* became and acted as executor of the said *Jacob Gibson*, the other executors having renounced, but that he has departed this life, insolvent, and entirely without assets, and that neither upon his estate, nor upon that of the said *Jacob*, have letters of administration been since taken out; that the insufficiency of the personal estate of the said *Jacob Gibson*, for the payment of his debts was fully shown in the case of *McCormick vs. Gibson, and others*, wherein all the parties to this suit, or those under whom they claim, were defendants, and that the decree for the sale of said *Gibson's* real estate, under which the said bank purchased, expressly reserved the rights of the said *Rebecca*, and required such sale to be made subject thereto; that the said *Edward R.*

*Gibson* possessed no means or property out of which the said charge of $500 a year could have been paid, other than that part of *Marengo* devised to him as aforesaid, and afterwards sold to the said *Fayette*, and that after the purchase aforesaid, by the bank, the said *Fayette*, as well as the said *Edward*, was entirely without means; and utterly unable to pay the said annual charge, the proceeds of the sales of the estate having been applied to the payment of the debts of the said *Jacob;* and concludes by praying a sale, subject to the said *Rebecca's* habitation right, and the privileges connected therewith, of the estates devised to the said *Edward R.* and *Fayette Gibson*, for the payment of the said charge of $500 a year, and all arrearages thereon, with interest, and asking that the residue of the proceeds of sale may be set apart and invested in such manner as to pay the said *Rebecca* the said sum of $500, annually, during her widowhood.

The answers of *Edward Lloyd*, the bank, *Kennedy R. Owen*, and *Horatio L. Edmonson*, all insist that the provisions in the will of *Jacob Gibson*, in favor of his wife, constituted no lien upon the estates devised to *Edward R.* and *Fayette Gibson*, but a mere personal charge upon these devisees; that by accepting these devises, and actually receiving and enjoying the benefit of the provisions contained therein, she renounced all claim to dower, if any she ever had, and has precluded herself from reinstatement to any such right, the bank, *Owen* and *Edmonson* also insisting, that if she can claim dower in any part of her husband's estate, she has failed to make the necessary and proper parties to her bill, and to tender herself ready to account for and refund the value of the various privileges enjoyed by her, and of the annuity paid to her, as she should have done; that *Edward R.* and *Fayette Gibson* paid to *Rebecca Gibson* the annuity of $500, as it became due, and supplied all the privileges to which she was entitled, or paid her a full equivalent therefor, and that she had executed to them full acquittances and releases, which enure to the benefit of all the said respondents; that they, or those under whom they claim, were purchasers for a full and valuable consideration,

without notice, *Lloyd* and *Edmonson* claiming that the purchase money for the lands held by them was applied, in whole or in part, to the payment of the debts of *Jacob Gibson*, deceased, and the said defendants, other than *Lloyd*, insisting, that by the laches of *Rebecca Gibson*, they have lost the remedy which they would otherwise have had against *Edward R. Gibson* and *Fayette Gibson*, by virtue of the general warranty in the deed from *Edward* to *Fayette*, under whom the bank and *Owen* claim, and in that from *Fayette* to *John W. Blake*, under whom *Edmonson* claims, the said *Fayette* having become utterly insolvent, and the said *Edward* having died in like condition, and entirely without assets; all these answers assert that no claim had been set up by *Rebecca Gibson* until the filing of this bill, and rely upon her gross neglect and laches, lapse of time and limitations, as full and complete defences thereto. The bank admits, as do all the said defendants, except *Lloyd*, the insufficiency of the personal estate of *Jacob Gibson* for the payment of his debts. The answer of *Edmonson* asserts, that under the decree in the case of *McCormick vs. Gibson*, the heirs of *John W. Blake* paid a contribution of $200, or more, towards the debt of the said *McCormick*, and avers, that he owns but a part of the land sold by *Fayette Gibson* to the said *Blake*.

After the answer of *Edmonson*, the bill was amended, by making *Hopkins* the owner of the residue of the land sold by *Fayette Gibson* to *Blake*, a party, and *Hopkins* filed his answer, claiming to be a purchaser for a valuable consideration, without notice of the complainant's claim, relying upon the answers of the bank, *Owen*, and *Edmonson*, and adopting them as his own.

At the July term, 1847, after the general replication had been entered to the answers filed, and commissions-in-chief to take testimony had been issued, the death of the complainant, *Rebecca Gibson*, was suggested; and thereupon, upon proper proceedings for that purpose, *Samuel Chew*, her executor, was admitted complainant in her stead, and the cause revived.

The will of *Rebecca Gibson*, which was filed in the cause,

was duly executed on the 4th August, 1846, and admitted to probate according to law. By it, after bequeathing to one of her grand-daughters, a negro woman and two children, the testatrix authorises her executor to compromise with the defendants to this suit, or others against whom she may have claims for moneys due to her under the will of the said *Jacob Gibson*, or for rents and profits by reason of the detention of her dower, in case they or any of them should desire a settlement without awaiting a final decree against them, and particularly desiring him, in such event, to settle, in a liberal manner, with the *Edmonsons* and *Lloyd*, and the owner or owners of the lands then occupied by them, formerly belonging to the said *Jacob Gibson;* and after providing for payment of the counsel fees incurred, or to be incurred in the prosecution of such suit, devises the residue of her estate, including the moneys to be recovered in said suit, to her executor, *Samuel Chew*, in trust, for the separate use of *Mary C. Gibson*, wife of *Fayette Gibson*, during her life, and after her death for the said *Fayette*, during his life, and after the death of the said *Mary* and *Fayette*, in trust for such of the children of the said *Mary* and *Fayette* and of the said *Fayette* as may be living at the death of the survivor, until they shall respectively arrive at age, or until the marriage of the females; the children of any deceased child to take the place of their parent; and confers certain powers on said trustee in relation to the management of the said estate.

A large mass of testimony was taken under the commission, the purport of which sufficiently appears from the preceding statement, and will also be found in the opinion of the chancellor pronounced upon the passage of his decree, dismissing the bill reported in *2nd Md. Chancery Decisions*, 231.

The cause was argued before SPENCE, MAGRUDER and MARTIN, J.

HAMMOND and McLEAN, for the appellants, contended.

1st. That the provisions in the will of *Jacob Gibson*, in favor of *Rebecca Gibson*, were each and all of them charged

upon the estates devised by him to his sons, *Edward R.* and *Fayette Gibson.*

2nd. That *Rebecca Gibson,* by virtue of her acceptance of such provisions, in lieu of dower, became a purchaser of the same for a fair consideration, and is therefore, entitled to have them enforced in her favor, or in default thereof, the consideration having failed, and nothing having passed by the devise, to be remitted to her dower right in the whole estate of *Jacob Gibson,* the devisor.

3rd. That this devise, being in lieu of dower, and a lien upon the real estates charged, as contended in the first point, is, like the claim of dower at law, exempt from the operation of the statute of limitations; and

4th. That the defence of lapse of time cannot avail against the claim set up in the bill, the complainant having been in law and equity justly entitled to its enforcement, and her apparent *laches* being explained and sufficiently accounted for by circumstances disclosed in the proceedings.

RANDALL, MURRAY and ALEXANDER, for the appellees, insisted.

1st. That this annuity given by *Jacob Gibson's* will to his widow, the complainant, for life, to be paid jointly by his sons, is a mere personal obligation, and not a charge upon the land.

2nd. If not, the parties all so considered it; acted as if it was no lien on the land, in their dealings with the land; the complainant knowing this, and setting up no opposition to it, after the acquisition of rights, under this belief, by others, she cannot disturb them by setting up this claim for arrearages of this annuity, on the lands purchased of her sons.

3rd. That if such a lien does exist, it can be enforced against purchasers for a valuable consideration only from demand made on them—and without interest.

4th. That the statute of limitations will bar the claim of the complainant.

5th. That *laches,* lapse of time, &c., will bar the claim of the complainant.

6th. Especially in this case, the circumstances and facts of which show no equity in the complainant against the defendants.

7th. That the complainant has actually released this claim, if it ever existed, against the land, in the releases she gave to *Fayette Gibson* and *Edward R. Gibson*, which enure to the benefit and protection of the appellees.

MAGRUDER, J., delivered the opinion of this court.

This is an appeal from a decree of the court of chancery, dismissing the bill of the appellant.

He is the executor of *Rebecca Gibson*, the widow of *Jacob Gibson*, who died in January 1818.

The testator, it appears, died the owner of a large estate, and by his will left to his widow, personal property, some privileges, and also $500 payable to her annually by her two sons, to whom in various parts of his will he devised a large estate. This provision made for the widow, was expressly declared to be in lieu and satisfaction, both of her dower and of her thirds of the personal estate. Of this provision she accepted.

On the 10th of June 1846, she filed this bill of complaint, and alleges that she has received no part of the annuity thus given her; insists that the real estate devised by her husband to her two sons, *Edward* and *Fayette*, is charged with the payment of the annuity, and asks a sale of the real estate devised to them for the payment of what is now due, and to secure the payment of the annuity, as it may hereafter become due.

The persons who were in possession of the estate devised to *Edward* and *Fayette Gibson* at the time when the bill was filed, are all of them made defendants. The widow being since dead, the appellant as her executor was made the complainant in the court below.

In the argument of this case it has been insisted, that as both *Edward* and *Fayette Gibson* are dead and insolvent, unless the real estate devised to them be made answerable for the annuity, she cannot receive that which she agreed to accept in lieu of dower, and ought to have dower allowed to her.

It would seem to be a sufficient answer to this to say, that the bill of complainant is not so framed as to make it a subject of inquiry in this case, whether and upon what terms, she is entitled to dower.

No doubt a widow after accepting the provision made for her in her husband's will, may become entitled to dower. Such is the law, because the act of 1798, ch. 101, sub-ch. 13, makes it to be law. That sub-chapter first provides that if the devise of other real and personal estate, or of both, shall be expressly in lieu of her legal share of one or both, she shall accordingly be barred, unless she renounce as aforesaid. What is given to this widow by the will is expressly given in lieu of her dower and interest in the personal estate. This provision made for her, she expressly accepted.

A widow cannot be compelled to accept of the provision in the will in lieu of her dower, but having accepted of it she cannot in all cases claim dower in lieu of that provision. Whatever right she has to claim dower afterwards, she must derive from the law, and this is to be found in the same sub-chapter and in these words, "if in effect nothing shall pass by such devise she shall not thereby be debarred whether she shall or shall not renounce." It is understood that in asking to be endowed of any part of the real estate of her husband, she relies on this clause of the act of 1798. If so, there must be satisfactory proof that her case comes within this provision of the act of Assembly. She agreed to take the property bequeathed to her, and $500 per annum, payable by her two sons, with some personal property and certain privileges, in lieu of her dower and thirds. Did nothing pass by these provisions in the will? Was the annuity payable by the sons, valueless at the time she agreed to accept it? What were the privileges worth to her? What personal property did she receive? These are questions, proper to be settled if the widow in this case had expressly claimed dower, notwithstanding her acceptance of the provision made for her in lieu of her dower. But she is not in court to make known to us, that nothing passed to her by the devise. It is true it is suggested that if she could say so, then she

would have a right to demand dower.   All her *allegata* however go to show, that if she is not to suffer by reason of want of due diligence, there is an ample fund in real estate to satisfy every cent which she claims, and to which she can have no claim, while she can ask for dower.   We must say then that dower, or damages for the detention of her dower, cannot be awarded to her representative in this suit.

Is she entitled to all or to any part of the annuity left to her by her husband's will, and to claim that the estate devised to the two sons be charged with the payment of it in the hands of those who now own it?   This we are next to decide.

The present owners of this land are to be considered *bona fide* purchasers for valuable consideration.   It is true there is some testimony designed to satisfy us, that the *Farmers Bank of Maryland* purchased a part of it at something below its value.   The answer to all this is, that such an investigation as this would lead to, is entirely out of place here.   If any person interested in the estate had any objection to the sale, the objection ought to have been made at the proper time.   The sale being ratified, and all persons having acquiesced in it, it is not now to be inquired whether a better price might not or ought not to have been obtained.   To be sure, the land was purchased subject to all the rights and privileges of the widow. And this seems to be a proper place to inquire whether this particular land when sold, was subject to any claim of the widow.

The real estate which was devised to *Edward* and *Fayette Gibson*, and which it is thought was charged with the payment of this annuity, consisted principally of land which had been previously mortgaged by the testator to the *Farmers Bank of Maryland*.   The debt intended to be secured being unpaid, a decree was obtained in the court of chancery, for the sale of the mortgaged premises, and at this sale the bank became the purchaser of the land devised to *Edward Gibson*. Now what interest in this land was charged, (if the widow had any lien upon it) with the payment of this annuity?   Certainly, only that which a morgager has a right to devise, and a mort-

gagor can only devise the equity of redemption. If the debt, which the mortgage was designed to secure, had been paid off without any sale of the mortgaged premises, then to be sure, the devisee would have had a more valuable estate than the equity of redemption, and the widow's security for her annuity, (if the land was by the will charged with the payment of the annuity,) would have been improved. But the land was sold to pay the debt, for which it was previously mortgaged, and when sold, there remains no equity of redemption as a security for the annuity. If the fund brought into chancery by the sale of this, and the rest of the mortgaged premises, had been more than sufficient to satisfy the mortgage, then to that surplus the widow might have preferred a claim, in opposition to the claim of the devisee. See 1*st John. Chy. Reports*, 45.

But there was no surplus, and no longer any equity of redemption, and of course, so far as it concerns this estate purchased by the bank it is needless now to inquire whether the will did or not charge it with the payment of the annuity.

There is to be sure some difference between the sale to the bank by the court's trustee and that made of other parcels of the land mortgaged. But we cannot discover in this record, or in any of the proceedings in any other case to which we have been referred, that to the other parcels of land conveyed by the mortgage deed, she would now have any claim.

Surely it cannot be insisted, that because the widow is to be deemed a purchaser for a valuable consideration, she could take under her husband's will any land, which her husband had previously mortgaged, and which it became necessary to sell in order to pay the mortgage debt. She might have been entitled to dower in the land mortgaged, but she agreed to take what her husband agreed to give, in lieu of her dower, and she can no longer claim that which she had relinquished, unless in the case spoken of in the act of 1798, and then she must show that hers is such a case, and cannot well show it in a bill filed expressly to recover that which she agreed to take in lieu of her dower in this as well as the rest of the real estate. No offer by the husband though accepted by the wife, will deprive a

mortgagee of his security.   They cannot make mortgaged premises answerable for the   widow's claim to dower  in other lands.

We have been required in  the course of the  argument to assume that the widow was rather more  ignorant than the law will allow her to be.   When such a devise is given, and expressly declared to be given  in  lieu  of dower, a  widow  is  called upon to determine, and is allowed what the law deems  ample time to determine whether she will accept in lieu of  her dower that  which  her husband  offers to her.   The presumption is that she gets  the necessary  information, takes  proper  advice, and knew what she was to receive and what she gave up.   In this very case we cannot doubt that she relinquished her dower for a very inadequate price.   But because of this, she cannot claim her dower after she has  relinquished it.

The court has been frequently referred to expressions which are to be found  in a  former decree of this court.   The real estate of which *Jacob Gibson* died  seized, was  directed to be sold subject to the devises to  the widow.   These words it is thought recognise, if they  do not establish, something very much in favor of the appellant.

The decree alluded to was passed for the sale of so much of the real estate of *Jacob Gibson*, as  was  necessary to  pay his debts of every description.   How  much of that estate or what part of it would be sold for the  purpose,  the court could  not then determine.   Certainly in  sales  made  for  the benefit of other creditors than those who had  mortgages,  the court could not interfere with any of the  legal  rights and privileges of the widow.   Surely the court could  not mean by the words repeated to us, that the testator by his will had given to his widow rights which she  might claim, though  thereby the security of the mortgagee was destroyed, or even impaired.

It sometimes indeed happens that the  same  question will come up for the decision of the  court, when, indeed, the facts are so different as to require, apparently, a different decision.  A widow may recover dower before foreclosure, though after the sale of the mortgaged premises, it must be pronounced that she has no claim.   *5 John. Chy. Rep.*, 452.

There is, however, one defence to this claim, a decision of which, in favor of the appellees, will render unnecessary an examination of other points which have been argued.

This bill was filed on the 10th day of June, in the year 1846, and it is designed to assert a claim to an annuity, payable ever since the year 1818, and no part of which, it is alleged, has ever been paid, and to recover which no legal steps appear to have been taken.

It is said in answer to this, that the widow was not apprized, until the decision of this court in 1839, that the land devised to her two sons, *Edward* and *Fayette*, was charged with the payment of her annuity. She then agreed to accept, (in lieu of her dower) of $500, for which the sons were personally responsible, and without any suspicion that she had the security on which she now relies.

But the objection is not that she did not proceed against the land devised to the sons, and which might or might not be answerable for the annuity, but that she never made an effort to recover that annuity of her debtors, who, according to the case of *West and Biscoe*, 6 *H. & J.*, 460, were personally responsible. The land devised to her two sons, may or may not be chargeable with this annuity while it is to be paid, but is certainly no security for its payment, when for any reason it is presumed no longer to be due. The annuity is the *debt*, the sons are the debtors, and any security which the creditor had for the payment of it, ceases to be such, whenever the debt is proved, or presumed to be paid.

For many years after the same was payable, it is not denied, that the persons who alone were bound to pay it, were able. If we look at the proof in the record, we are brought to the conclusion, that years before the filing of this bill, the widow chose to have, and to acknowledge that she had, no claim against her children, though subsequently, she would seem to be willing to make, if she could, the land devised to them, answerable, after it had been sold to *bona fide* purchasers.

She relies upon ignorance of her title, and it is thought, that until this *disability* is removed, she was not obliged to assert

her title. We are told, however, that the purchasers who bought without notice, had notice, because the will in the orphans court was notice to them. But was not she equally bound to take notice of the will and proceedings upon it in the orphans court? Had she not actual notice of her own act in that court, the acceptance of the provision made in the will for her, which it is said, gave to her this right to charge a portion of the real estate with the annuity, which was taken as an equivalent for her dower in the whole of the real estate?

She did not sleep upon her rights, it is said, and this because, until this court in 1839 instructed her otherwise, she was not aware that she had the right which she would now assert. But did not the self-same decree which thus instructed her, also apprize her, that the whole of her late husband's real estate, if needed, was about to be sold for payment of his debts? The objection is not so much to her failing to disclose the existence of her lien, as of the amount of her claim against her sons, an amount which nobody is bound to know, unless she herself thought proper to disclose it. Yet when she is heard to say any thing about her claim against her sons, she speaks of it, not indeed as a claim which never had existed, but one which was relinquished.

As early as the year 1839, it is admittted, that she had the notice which ought to make her more vigilant and active in the assertion of her claim; yet even then she remains silent, until 1846, during which time much of the estate is disposed of. See *5th Johnson's Chy. Cases, p. 561*, for the legal effect of this silence.

What is the effect of all this negligence on her part to make known the claim which it is now said she has upon this real estate, in the hands of *bona fide* purchasers, for a valuable consideration?

Let us first inquire what our own decisions say in answer to this inquiry.

In the case of *Steiger's Adm'r, vs. Hillen,* 5 *G. & J.*, 121, this court said, "after the lapse of twenty-five years from the inception of title, a delay entirely unexplained, and without any

claim whatever in the intermediate time being made, it would seem to be against public policy and convenience to allow the commencement of a controversy for rents and profits.'' This is quite as applicable to the case before us as to the case in which the remark is made. The widow has never insisted upon the payment of her annuity; she has remained silent, concealing her claim during a longer period of time.

It is said, however, that this case was overruled in the case of *Sellman vs. Bowen,* 8 *Gill and Johnson.* In that case it is said, '' that in *Steiger and Hillen,* countenance is given to the doctrine that *at law,* a widow may recover from the alienee of her husband her damages;'' and it was added, '' that it is only in a court of equity that the rule will apply,'' nothing else that was said in the case of *Steiger and Hillen* is questioned.

Very recently too, in the case of *Kiddall vs. Trimble, Ex'cr of Jacob,* (decided December term, 1849, 8 *Gill,* 207,) this court, after quoting from *Steiger and Hillen,* what is above given, added, '' it would be difficult to decree rents and profits in this case without seeming to question the correctness of that decision.'' This surely evidenced no disposition in the court then to deny the correctness of any thing in *Steiger and Hillen* touching the law of *this* case.

Such ought now to be considered settled law in *Maryland.* In *England,* excuse is often found for the delay of a widow to assert her rights, in the difficulty of ascertaining '' the lands out of which she is dowable, and the persons against whom to bring her writ;'' the title papers are not within her reach. In the case before us no such excuse can be offered. Yet in *England,* we find every where repeated with approbation, the remarks of *Lord Camden,* 3 *Bro. Chy. Rep.,* 630. '' Laches and neglect are always discountenanced, and therefore, *from the beginning of this jurisdiction,* there has always been a limitation to suits in this court. *Expedit reipublicæ ut sit finis litium,* is a maxim which has prevailed in this court at all times, without the help of an act of Parliament. Nothing can call forth this court into activity but conscience, good faith, and

48    v.9

reasonable diligence.   Where these are wanting, the court is passive and does nothing.''

With the testimony to be found in the record, it can scarcely be believed, that if this bill had been such a bill as that in *West and Biscoe*, brought to recover these annuities, of *Edward* and *Fayette Gibson*, the claim could not be sustained.

The court would presume, that the annuity had been realized; the legal presumption would '' hold the place of particular and individual belief.''    And surely, if the annuity could not be recovered from those who undertook to pay it, the security for that annuity, even if there be any such security, could no longer be regarded as answerable for it.

We forbear, (as the case does not require it,) to say whether, in our opinion, the land devised to these two sons was charged with the payment of this annuity.    This is a question of intention, and cannot well serve as a precedent in any future case.

A receipt given by *Mrs. Gibson* to *Fayette Gibson*, bearing date, November 15th, 1841, for '' $5, in full of all money due from said *Gibson* to me, for rent or otherwise,'' has been introduced into the case by the appellees, and this, it seems to be thought, although it may reduce considerably the claim of the appellant, furnishes evidence, that the annuities which became due subsequently to its date, are not to be presumed to have been paid.    This paper, *per se*, does seem to warrant such a conclusion; but then there is abundant testimony, that this receipt was executed, not to be evidence against the widow, but, as she herself stated at the time of its execution, '' to avoid any difficulty between her children and grand-children after her death.''   The presumption too, furnished by the circumstances relied on, is not that either son paid the last year's annuity, but, perhaps, that the mother, who took so little in lieu of her dower, when, whatever she took was taken from her children, as soon as she discovered their embarrassments, was content to release what she had a right to claim of them, in consideration of the support which she afterwards received from them, if not for other considerations, of which it would be unreasonable to ask the appellees to furnish the evidence.

Board of Com. for the Fred. Female Seminary, *vs.* The State.—1850.

We can discover no reason for reversing or modifying the decree of the chancellor, and approve of what he has said in regard to the staleness of this demand.

DECREE AFFIRMED WITH COSTS.