1825.

West
vs
Biscoe

————

## S. & R. W. WEST vs. BISCOE.

JUNE.

Family settlements are to be construed most favourably to promote and effectuate the intentions of the party settling.

The statute of uses t. of 27 Hen. VIII, ch. 10. affects a deed of bargain and sale no farther than to vest the legal estate in the bargainee.

H W conveys her real estate by a deed of bargain and sale, to W. B, in trust for her two sons, R and S W, "provided that they shall, before they receive any benefit or interest under the trust, pay, or cause to be paid, or secure to be paid, l500, to each of her two granddaughters M O, and H O,"—Held, that the l500, were a charge on the estate

If R and S W, take possession of the estate under such a conveyance, they became personally liable for the l500, and may, in equity, be enforced, personally to pay it.

Where the deed makes the said l500, payable to the granddaughters on their arrival at the age of 16 years, or on their marriage, and they do arrive at that age, or marry, before the sons R and S W take possession of the estate conveyed, the right to the 500l, is a vested right, and becomes payable to the grand-daughters, or their representatives, on R and S W, taking possession, with interest thereon from the time the grand-daughters did so respectively arrive at the age of 16 years, &c.

One of the granddaughters having married and died in the life-time of her grand-mother, her portion survived to her husband.

Under what circumstances a bill may be taken *pro confesso* against one of the defendants.

APPEAL from *Prince-George's* county court, sitting as a court of equity. The bill of the complainant, (now appellee,) filed against *William Beanes*, and *Stephen and Richard W. West*, (the appellants,) on the 16th of September 1818, stated, that on the 9th of April 1798, *Hannah West*, deceased, being seized of a large real estate, by deed conveyed to said *Beanes*, his heirs and assigns, all her real estate, in trust for her own use during the term of her natural life, and from and after her death to be equally divided between her sons, the said *Stephen* and *Richard W. West*, as tenants in common, in tail. That the trust so created for the benefit of *Stephen* and *Richard* was, upon the express proviso and condition that they should, before they received any benefit thereof, or estate or interest therein, pay, or cause to be paid, or secure to be paid, the sum of £500 current money to each of the grand-

daughters of the said *Hannah*, to wit, *Maria Oden*, and *Hannah Oden*, at their arrival at the age of sixteen years, or day of marriage, which ever should first happen; that is, the said *Stephen* and *Richard* were to be respectively liable each to pay £250 current money to each of the said grand-daughters. That on the 31st of January 1812, the said *Hannah Oden* arrived at the age of sixteen years, and on the 1st of October 1812, intermarried with the complainant, who became entitled to receive of the said *Stephen* the said sum of £250, and of the said *Richard* the said sum of £250; the condition of the estates granted in trust for their use as aforesaid being the payment of the said sums of money; and which estates the said *Stephen* and *Richard* agreed to accept upon that condition. That the right and interest of the complainant's wife was and became a vested, and not a contingent interest, at the execution of the said deed by the said *Hannah West*, and that no subsequent circumstances could preclude her, or her legal representatives, from claiming or receiving the same when the period of payment arrived. That on the 8th of October 1813, *Hannah*, the wife of the complainant died, and thereupon the right to the said sum of £500 devolved upon the complainant. That in April 1815, *Hannah West* also died, and *Stephen* and *Richard* thereupon took possession of the estates granted to them as aforesaid, in trust for their use, according to the form of the gift and conveyance aforesaid, and now hold and occupy the same; but neither the said *Stephen* and *Richard* then, nor when the complainant's wife arrived at the age of 16 years, nor on the day of her intermarriage aforesaid, nor since those periods, paid, or cause to be paid, to the complainant's wife, or to the complainant, or secured to be paid, the said sums of current money in the said indenture specified, in pursuance of the condition therein stipulated, which condition enured to the benefit of the complainant's wife during her life, and to the complainant as aforesaid since her death; nor hath the said *William Beanes* taken any steps, or instituted any proceedings at law or in equity to compel the said *Stephen* and *Richard* to comply with and perform the condition aforesaid, by the payment of the said sums of money, with interest thereon, or by giving security to pay the same; but the said *Stephen* and *Richard*, (although thereto often requested,) and each of them, have, and hath hitherto wholly

refused, &c. *Prayer*, that *Beanes* may be enforced to ex-
ecute the trust, and that *Stephen* and *Richard* may be com-
pelled to pay to the complainant the sums of money re-
spectively due from them and unpaid, &c. The *subpœna*
which issued against the defendants was served on *Stephen*
*West* only, and on his nonappearance at the return day,
(April 1819,) an attachment of contempt was ordered and
issued against him, and the *subpœna* renewed against the
other defendants, returnable to the September term 1819.
At that term these process were returned not executed,
and the cause was continued until the following term. At
the next term, (December 1819,) the cause was further con-
tinued until April following. At the last mentioned term,
(April 1820,) neither of the defendants appearing, the at-
tachment and *subpœna* were again renewed, returnable to
the following June term, when the sheriff returned that he
had attached *Stephen*, and summoned the other defendants.
On motion of the complainant, the sheriff was ordered to
bring into court, at the next term, the body of the said
*Stephen*, and attachments of contempt were ordered and
issued against the other defendants. At the next term,
(September 1820,) the sheriff produced the body of *Stephen*,
who appeared by his solicitor, and it was ordered that he
answer the bill. No return was made of the attachments
against the other defendants, and the cause was continued,
until the next term. At that term, (December 1820,) the
complainant and *Stephen West* appeared, and *Stephen* not
having answered the bill, nor the sheriff returned the at-
tachments against the other defendants, the cause was
continued until the next, and in like manner to the two
succeeding terms. At September term 1821, *Beanes* and
*Richard W. West*, having been attached, appeared, and
answered the bill. By the answer of *Richard W. West*
he admits the facts as stated in the complainant's bill, (so
far at least as they relate to the dates or documents re-
ferred to in the bill,) to be true, but states that he never
received any advantage from the property conveyed to his
brother and himself, until after the decease of his mother,
in 1815, and that the property has not yet been divided
between his brother and himself. That he was not aware
that he was in law or equity liable for the payment of the
money demanded by the complainant, more especially as
he always considered the claim unfounded, either in ho-

1825.

West
v.
Bisce

hour or justice. *Beanes*, by his answer, states that he was named as the trustee in a certain deed executed by *Hannah West*, of the purport of the deed exhibited by the complainant with his bill. That he is not interested in the event of the said suit, and as for the facts stated in the said bill, that it is incumbent on the complainant to prove them, if disputed by the other defendants, who only are interested, he having no precise recollection of the dates referred to; and he prays he may be hence dismissed, &c. The cause was then continued to the next, and to the succeeding terms, *Stephen West* still being in contempt for not answering the bill. At April term 1822, it was on motion, ordered that *Stephen West* answer by the fourth day of the following term, and on the service of the order on him, and his default to answer by that time, that the bill as to him should be taken *pro confesso*. At the next term, (September 1822,) the defendants filed in court a copy of the will of *Hannah West* (admitted to have been 82 years of age in 1815, when she died,) dated the 24th of November 1813, and executed in the presence of one witness only, whereby among other things, she gave and bequeathed to her son *Richard W. West*, "all the remaining part of all my estate and property of every nature and kind, which is not herein otherwise disposed of, of which I may die possessed or entitled to." On motion of the complainant, the court [*Stephen*, Ch. J. and *Key*, A. J.] passed the following decree: "The bill, answers and exhibits, in this case being considered by the court, and the bill as against *Stephen West*, one of the defendants, being taken *pro confesso*, it is thereupon adjudged, ordered and decreed, this 9th of September 1822, by the said court, that the said *Stephen West* pay to the complainant the sum of £250 current money, with legal interest thereon from the 31st of January 1812, till paid; and that the said *Richard W. West* pay also unto the complainant the like sum of £250 current money, with the like interest thereon; and that the said *William Beanes* be hence dismissed with his reasonable costs." From this decree *Stephen* and *Richard W. West* appealed to this court.

The cause was argued before BUCHANAN, Ch. J. EARLE, MARTIN, and ARCHER, J.

1825.

West
vs
Biscoe

*Taney, Magruder,* and *F. S. Key,* for the Appellants, stated, that the complainant in the court below claimed relief under the deed executed by *Hannah West* to *William Beanes,* in two ways—1st. By compelling *Beanes* to execute the trusts alleged to be contained in the deed in favour of the complainant. 2d. By compelling the other defendants to pay the money provided for in the deed. The decree of the court below gave him relief in this latter way. They contended that the decree was erroneous, 1. Because the defendants, *S* and *R. W. West,* by accepting the property mentioned in the deed, came under no personal liability to pay the money claimed by the complainant.

2. If they did, the remedy was at law.

3. The complainant has no remedy either at law or in equity against any of the defendants.

4. That the deed exhibited is not a deed of trust. That conveying the estate to *Beanes* for the use of the other defendants, the use became executed by the statute, and they would take the estate, but for the payment of or securing the £500 being a condition precedent to the vesting of the estate. That this condition never having been performed, the estate never passed out of the grantor by this deed, but remained in her by reason of the nonperformance of the condition upon which it was limited to take effect till her death, and then passed to the devisee under her will.

5. That the *Wests* were not bound to pay until the estate came into their possession; and that the complainant's wife dying before then, her interest lapsed.

6. The bill taken *pro confesso* against *Stephen West* is irregular.

On these several points they cited 2 *Blk. Com.* 386, (and *Christian's note.*) *Preston on Estates,* 184, 190. *Doe vs. Leicester,* 2 *Taunt.* 109. *Phipps vs. Mulgrave,* 3 *Ves.* 613, *Chandos vs. Talbot,* 2 *P. Wms.* 612. *Roundell vs. Currer,* 2 *Bro. Chan. Ca.* 67; and *Cooper's Plead.* 14.

*Jones* and *R. Johnson,* for the Appellee, cited *Boraston's* case, 3 *Coke,* 19. *Fearne Con. Rem.* 318. *Thomas's Lessee vs. Wootton,* 4 *Harr. & M‘Hen.* 428. 2 *Blk. Com.* 165, 335, 336, 337. *Attorney General vs. Christ's Hospital,* 3 *Bro. Chan. Ca.* 165. *Hooley vs. Booth,* 2 *Vern.* 359. *Bacon vs. Clerk,* 1 *P. Wms.* 478. *Prec. in Chan.* 500, S. C. *Bland vs. Middleton,* 2 *Chan. Ca.* 1. *Attor-*

*ney General vs. Floyer*, 2 *Vern.* 749. 2 *Com. Dig.* tit. *Chancery*, (4 *W.* 18,) 707. *Miles vs. Leigh*, 1 *Atk.* 575. *Adair vs. Shaw*, 1 *Sch. & Lef.* 243. The act of 1785, ch. 73, s. 19.

1825.

West
vs
Biscoe

EARLE, J. delivered the opinion of the court. The deed of trust from *Hannah West* to *William Beanes*, contains a settlement of her landed estate on her family, and is to be expounded most favourably to promote and effectuate her intentions. It is a deed of bargain and sale, and the uses raised thereby are not operated upon by the statute of uses, further than to vest the legal estate in fee in *William Beanes*, subject to the trusts therein mentioned, which are all executory. The chief object of the settlement is to preserve the estate to her sons, and their children, and to transmit it to the latter unincumbered with debts. Next to this in importance is the provision for securing the payment by her sons to her granddaughters, of portions of £500 each, payable when they shall arrive at 16 years of age, or marry. Both these objects are intended to be answered through the instrumentality of the trust estate, by conveying the lands to the trustee, and his heirs, to hold the same in moieties for the use of her sons, *Stephen West* and *Richard W. West*; provided that they shall, before they receive any benefit or interest under the trust, pay, or cause to be paid, or secure to be paid, five hundred pounds current money to each of the granddaughters, *Maria Oden* and *Hannah Oden*, at their arrival at the age of sixteen years, or day of marriage, which shall first happen. At the time of the settlement *Hannah West* was an old woman, but having lived to a very advanced age, she unexpectedly to herself outlived her granddaughter *Hannah Oden*, who arrived at the age of 16 in the spring of 1812, married the complainant, *George W. Biscoe*, in the fall of that year, and died the succeeding fall. *Hannah West* departed this life in 1815, and her sons, *Stephen West* and *Richard W. West*, immediately after took possession of her landed estate, and have continually enjoyed it since, without having paid, or secured to be paid to their niece, *Hannah Oden*, or her representatives, the portion of £500, or any part of it. In 1818 *George W. Biscoe*, the surviving husband, filed his bill in *Prince-George's* county court, on the equity side thereof, against *William Beanes*, the trus-

1825.

West
vs
Biscoe

tee, and the sons *Stephen West* and *Richard W. West*, to enforce the execution of the trust, and to compel the said *Stephen West* and *Richard W. West* to pay to the complainant the portion thus given to his deceased wife. The facts of the bill are not denied by the answers of the trustee, and *Richard W. West*, and they are taken *pro confesso* against *Stephen West* for the want of an answer. The chancery jurisdiction below decreed a dismissal of the bill as to the trustee, and a payment of the portion, with interest by *Stephen West* and *Richard W. West*, considering them under a personal obligation in equity to pay it. This decree this court have to revise and decide upon, and particularly they have to decide, whether it can be sustained as an adjudication *in personam*.

The court have reflected maturely on this case, and have examined all the authorities within their reach, that have any bearing upon it. That the portion claimed is a charge in equity upon the estate conveyed in trust, we have no question, although the grantor has not in express terms made it so. The clause directing it to be paid, or secured to be paid, before her sons entered upon the beneficial use of the estate, was evidently introduced in favour of her granddaughter, to accelerate the payment to her, and strongly implies a charge upon the estate, and particularly in the event of the sons refusing to accept it, on the ground of its insufficiency to pay the portion. That the clause is to be viewed in this light, is amply proved by the authorities, and more especially by the case of *Wallis vs. Crimes*, to be found in 1 *Cases in Chan.* 89, which, as to this point, may be considered a parallel case, and will therefore be circumstantially adverted to. The father of Sir *George Crimes* conveyed his estate to trustees in fee, upon the trust, that if Sir *George*, within six months after his father's death, secured to the trustees £500 for the benefit of Sir *George's* younger children, then (after such security first given to the trustees) to convey the premises to Sir *George* and his heirs; and until the time limited for giving the security, the trustees to stand seized to the use of Sir *George's* eldest son, (Sir *Thomas Crimes*,) for his maintenance; and in default of such security, the trustees, at the request of Sir *George's* eldest son, to convey to him. Without giving the security, or in any way respecting the trust, Sir *George* entered upon the estate, and considering it as

1825.

West
vs
Biscoe

his absolute property, demised it for a long term of years, by way of mortgage, to secure the payment of a sum of money, and died. The executors of the mortgagee exhibited their bill against Sir *Thomas Crimes,* and the trustees, to enforce a redemption, or to hold discharged of equity, and the court of chancery decreed, upon a view of all the facts, including the conveyance in trust, that the executors hold and enjoy the premises as a security of the mortgage money and interest, against the defendants, and all claiming under them, *charged with the £500 to* Sir *George Crimes's* younger children, from the time the plaintiff came into possession, unless the defendant, Sir *Thomas Crimes,* should pay the mortgage money and interest, by a given day. Upon a bill of review, Lord Keeper *Bridgeman* refused to reverse the decree, and declared he looked upon the condition precedent to be in the nature of a penalty, and that he would regard the intent of the trust, which was to secure the £500 to the younger children.

If the portion claimed by the surviving husband is thus a charge upon the land, is he constrained to follow it in the hands of the trustee; and is he, without remedy in equity against *Stephen West* and *Richard W. West,* on their personal obligation to pay it?.

We have to confess, that we should regret to find ourselves under the necessity of answering either branch of this proposition in the affirmative, for we verily think, the appellants are bound in conscience to fulfil the wishes of their aged parent, and to pay this portion, according to her intentions, unequivocally expressed in the settlement. We do not, however, feel ourselves under any such necessity, entertaining decidedly as we do the opinion, that the proceeding *in personam,* and the decree thereon, may in the particular circumstances of this case be sustained on the strictest principles of equity. The legal estate in the lands of *Hannah West,* is by the deed vested in the trustee, who holds them for the *use* of *Stephen West* and *Richard W. West,* which use (distinguished in the trust deed by the epithets "benefit, estate, interest,") they were not to enjoy under the trust, until they had paid, or secured to be paid, the portion in controversy. They nevertheless, wholly unmindful of the terms of the settlement, entered as before mentioned into the possession and enjoyment of the granted premises, and had the use of

1825.

West
vs
Biscoe

them, and the actual pernancy of the profits, for several years before the bill exhibited, and from thence arises, as we think, their personal responsibility to pay the portion sued for by the appellee.

If *Stephen West* and *Richard W. West* had refused to accept the grant upon the terms of the settlement, it would have become the duty of the trustee to interpose, to secure the granddaughter's portion, as it was perhaps his duty to see the portion paid, or secured to be paid by them, before he permitted the enjoyment of the use. They did not, however, refuse the grant, but on the contrary accepted it, by taking possession of the estate, and enjoying the use; and they thereby admitted its adequacy to pay the portion of the granddaughter. This brings the case within the reason of the case of *The Attorney General vs. Christ's Hospital*, reported in 3 *Brown's Reports*, 165, although that case should be said not to agree in all its facts with this. The condition there, was to be performed subsequent to the acceptance of the devise, whereas it is objected here, that the condition is precedent, and that the interest did not vest until the condition was performed.

However this objection might have availed, if *Stephen West* and *Richard W. West* had refused to accept the grant upon the terms of the settlement, it can have no influence on the present decision, when it is considered, that they have had for years the possession of the estate, and the full enjoyment of the use, in the same manner, and precisely as if they had performed the condition by paying, or securing to be paid, the granddaughter's portion. Instead of paying and possessing, they have chosen to possess without paying; and surely it cannot but be in accordance with the best principles of equity jurisprudence, to compel them to pay. The possession of the devised property bound *Christ Hospital* to a performance of the condition annexed to the devise; and in like manner, the possession and enjoyment of *Stephen West* and *Richard W. West*, of the use designed for them, should bind them to a performance of the condition, which ought to have been performed precedent to their possession. The distinction between those two kinds of conditions, as to relief, is moreover trifling, if not nominal, where the case lies in compensation, as this unquestionably does. See *Francis's Maxims*, 49. 1 *Fonbl*, 211, 218, and the cases there cited.

After the day of payment, the acceptance of compensation may be enforced, to vest the estate in the party not performing, and on principles of reciprocity he should be coerced to make compensation, where by his own act he becomes possessed of, and has the fruition of the estate.

The opinion that the appellants are under a personal obligation to pay the portion of *Hannah Oden*, to her husband and representative, receives strength, we think, from other considerations. They have fully admitted the sufficiency of the granted premises to pay the portion, but the admission does not make it so, nor does it in any manner appear that it is so. If it is inadequate, the rents and profits must supply the deficiency, and as they have been the receivers for years, they have made themselves personally liable to pay it. These receipts are too within purview of the bill, which charges that *Stephen West* and *Richard W. West* accepted the grant, and possessed themselves of the granted premises, and have had the enjoyment of them, and prays that they may be compelled to pay. Again, if they had performed the condition, by *securing* the portion to be paid to *Hannah Oden*, on her arrival at the age of 16, or day of marriage, which should first happen, they would have incurred a personal responsibility within the contemplation of the settlement; and it seems consonant to justice, that they should be exposed to a like liability, by voluntarily placing themselves in the same situation, and taking to themselves the same enjoyments, as if they had performed the condition. The decree below we think right, and therefore we affirm it.

DECREE AFFIRMED.